**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEFFREY LAUREANO | No. 23cr12 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN**, **District Judge.**

## I.    BACKGROUND

The Government's Information accuses Defendant Jeffrey Laureano of violation 8 U.S.C. § 922(g)(1), the felon-in-possession statute.  D.E. 1 (the "Information").   Specifically, the Information alleges that on November 20, 2021, Defendant Jeffrey Laureano was on federal supervised release stemming from a 2014 federal felony[1] drug trafficking conviction.  Opp'n at 1. Law enforcement officers saw Laureano purchase extended firearm magazines and three large boxes of ammunition at a Pennsylvania gun show.  *Id.*  In New York, officers stopped and searched Laureano's car, where they found over 3,000 rounds of 9mm ammunition,[2] seven high-capacity firearm magazines, a metal knuckle, and a metal knuckle knife.  *Id.*

---

[1] A "crime punishable by imprisonment for a term exceeding one year," § 922(g)(1), excluding any state crime classified as a state misdemeanor and punishable by a term of imprisonment of two years or less," § 921(a)(20)(B).
[2] This included 40 rounds of 9mm Radically Invasive Projectile training ammunition and 1,000 rounds of CCI/Speer 9mm training ammunition.  D.E. 1.

Laureano had four prior felony convictions: two for driving while intoxicated,[3] a forgery-related conviction[4] for paying bar staff with counterfeit hundred-dollar bills, and the 2014 heroin trafficking conviction. *Id.* at 2. As to the latter, officers observed Laureano carry a cardboard box out of a Bronx, New York apartment into a waiting car, followed the car into New Jersey, and stopped the car, where found almost a kilogram of heroin. *Id.* Laureano pled guilty before Judge McNulty to conspiracy to distribute 100 grams or more of heroin. *See* No. 14cr7 (D.N.J.) at D.E.s 25-29. On July 30, 2014, Judge McNulty sentenced him to 64 months' imprisonment and 4 years' supervised release. *Id.* at D.E.s 35-36.

Laureano began serving his supervised release term on December 21, 2018. Opp'n at 3. On February 9, 2021, Judge McNulty denied Laureano's motion for early termination of supervised release. *United States v. Laureano*, No. 14-7, 2021 U.S. Dist. LEXIS 24401 (D.N.J. Feb. 9, 2021).

On January 10, 2023, Laureano pled guilty before Judge McNulty to the felon-in-possession charge at issue here.[5] After pleading guilty but before his sentencing, Laureano moved, pro se, to dismiss, arguing that § 922(g)(1) is facially unconstitutional, and unconstitutional as applied to him. D.E. 15 ("Mot.").[6] The Government opposes. D.E. 17 ("Opp'n"). The Court

---

[3] On June 10, 2010, Laureano received two concurrent six-month prison sentences for driving while intoxicated within ten years of a prior conviction for the same crime. Opp'n at 2 n.2. Because this was a second offense, both were class E felonies under New York Law, punishable by up to 4 years' imprisonment. *Id.*; New York Vehicle and Traffic Law §§ 1192(2), (3).

[4] Attempted possession of a forged instrument in violation of New York Penal Law 170.30, a class D felony punishable by up to 7 years' imprisonment.

[5] After Judge McNulty's retirement, this matter (and the related violation of supervised release) was transferred to the undersigned.

[6] His counsel adopted the motion.

construes the filing as a motion to withdraw the guilty plea and dismiss and, for the reasons below, will **DENY** the motion.

## II.    ANALYSIS

### A.    Withdrawing a Guilty Plea

To prevail on a motion to withdraw a guilty plea, a defendant must provide a "fair and just reason" to withdraw his guilty plea, which is a "substantial burden." *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011); Fed. R. Crim. P. 11(d)(2)(B). "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). When evaluating whether there are "fair and just" reasons for a withdrawal of a plea, a court "must consider three factors: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *United States v. Rivera*, 62 F.4th 778, 788 (3d Cir. 2023). Laureano does not address these factors, which itself merits denial of the motion.

The Court, interpreting his argument liberally, interprets it as an assertion of legal innocence. However, Laureano waived any defenses when he entered his guilty plea after Judge McNulty conducted an extensive colloquy explaining the consequences of pleading guilty and finding that Laureano had knowingly, intelligently, and voluntarily waived his constitutional rights. *See United States v. Morris*, No. 98-133, 1999 U.S. Dist. LEXIS 13321, at *16-17 (E.D. Pa. Aug. 31, 1999); *United States v. Napier*, 1998 U.S. Dist. LEXIS 17323, No. 97-214 at *3 n.4 (E.D. Pa. Nov. 4, 1998) (holding that defendant waived defenses when he entered his guilty plea

because the court had conducted an extensive colloquy explaining the consequences of pleading

guilty and the defendant had stated that he understood those consequences).

But even if Laureano had not waived his rights, his Second Amendment arguments to

dismiss the Information are unavailing, and therefore insufficient to permit the withdrawal of his

guilty plea. *See United States v. Feliciano-Estremera*, No. 22-182, 2022 U.S. Dist. LEXIS 169472,

at *9 (D.N.J. Sep. 20, 2022) (because defendant's theory of legal innocence lacks merit, defendant

failed to justify withdrawing his plea); *Morris*, 1999 U.S. Dist. LEXIS 13321, at *20 (same).

**B.      Second Amendment Jurisprudence Before and After *Bruen***

The Second Amendment provides that a "well regulated Militia, being necessary to the

security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  Until

recently, many courts, including the Third Circuit, required a two-step means-end analysis in

Second Amendment cases.  First, courts would ask whether "the challenged law imposes a burden

on conduct falling within the scope of the Second Amendment's guarantee."  *United States v.

Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010).  If so, courts would "evaluate the law under some

form of means-end scrutiny.   If the law passe[d] muster under that standard, it [was]

constitutional."  *Id.*

In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, the Supreme Court eliminated any means-end

analysis and clarified the framework that courts should follow.  142 S. Ct. 2111, 2127 (2022).

Now, "[t]o justify its regulation, . . . the [G]overnment must demonstrate that the regulation is

consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation

is consistent with this Nation's historical tradition may a court conclude that the individual's

conduct falls outside the Second Amendment's 'unqualified command.'"  *Id.* at 2126 (quoting

*Konigsberg v. State Bar of Cal.*, 366 U. S. 36, 50 n.10 (1961)).  Section 922(g)(1) clearly regulates

possession of a firearm—it is effectively a lifetime ban on firearm and ammunition possession for felons.  Thus, the Court must apply *Bruen*'s framework.

*Bruen* mandates two steps.[7]  First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  *Bruen*, 142 S. Ct. at 2129-30.  And second, if the Second Amendment covers the conduct, the "presumption" that the conduct is constitutionally protected can be rebutted only if the Government is able to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *Id.* at 2130.

Many defendants have argued that *Bruen* or the Third Circuit's recent *en banc* holding in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023), finding §922(g)(1) unconstitutional as applied to a civil petitioner with a 20 year-old non-violent felony conviction, has rendered § 922(g)(1) unconstitutional.  Not so; § 922(g)(1), *District of Columbia v. Heller*, 554 U.S. 570, 583-84 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) live on.

Most jurists to address the issue have emphasized that *Bruen* does not disturb any part of *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns, including such restrictions on convicted felons.  *Bruen*, 597 U.S. at 72 (Alito, J., concurring).  For example, Justices Kavanaugh and Roberts reassert that "'[n]othing in [*Bruen*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . .'"  *Id.* at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626 and *McDonald*, 561 U.S. at 786).

---

[7] Even courts characterizing *Bruen*'s framework as a "one-step, burden-shifting approach" recognize that the "approach consists of *first* determining whether the Second Amendment's plain text covers [the charged] conduct, and *then* determining whether [the government has] met [its] burden of demonstrating that the regulation is consistent with this Nation's historical tradition of firearm regulation."  *Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 298 (N.D.N.Y. Nov. 7, 2022).

Likewise, Justice Alito emphasized that *Bruen* does not "disturb[] anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns," *id.* at 2157 (Alito, J., concurring), and he reiterated that *Bruen*'s holding is limited to the rights of "law-abiding people," *id.* at 2159 (Alito, J., concurring); *see United States v. Canales*, 2023 U.S. Dist. LEXIS 208177, at *3 (E.D. Pa. Nov. 20, 2023) ("[S]ix Justices (Roberts, Alito, Kavanaugh, Breyer, Sotomayor, and Kagan), through concurring and dissenting opinions, [have] signaled their understanding that the majority opinion in *Bruen* did not call into question the constitutionality of the § 922(g)(1).")

It is true, after *Range*, that a Second Amendment challenge to § 922(g)(1)'s constitutionality, as applied to a particular defendant, is "nonfrivolous." *United States v. Perez*, No. 22-55, 2024 U.S. Dist. LEXIS 24805, at *3-4 (D. Del. Feb. 13, 2024). There are, in other words, conceivable scenarios—like Range's—in which the Second Amendment could be found unconstitutional as to a particular individual's circumstances and background. Thus, *Range* is considered an "outlier" because he

> had been convicted in 1995 of a non-violent misdemeanor (considered to be a felony for federal purposes due to the maximum sentence being five years imprisonment), served a probationary sentence, paid his financial obligations caused by the conviction, and otherwise lived without contact with the criminal justice system for more than twenty years. He then came to court so that he could purchase a long gun to go hunting or a shotgun for self-defense at home.

*United States v. Cook*, 2023 U.S. Dist. LEXIS 216556, at *2 (D. Del. Dec. 5, 2023).

Indeed, Third Circuit itself described *Range* as a "narrow" holding. 69 F.4th at 104 n.9. This Court likewise interprets *Range* narrowly, *i.e.*, to the limited, or reasonably similar, circumstances of an individual petitioner with a single, decades-old non-violent felony conviction affirmatively requesting to purchase a long gun to go hunting or a shotgun for self-defense at home.

Most courts have done the same, rejecting post-*Range* "as-applied" challenges to §922(g)(1) prosecutions. In doing so, "[t]hose courts have found that there is a historical tradition that legislatures have disarmed those individuals thought to be dangerous or a threat to public safety if armed." *Cook*, 2023 U.S. Dist. LEXIS 216556, at *2 (citations omitted). Indeed, the Third Circuit recently rejected, albeit in a non-precedential decision, a Second Amendment challenge to § 922(g)(1). In *United States v. Hall*, No. 23-1430, 2024 U.S. App. LEXIS 3115, at *4 (3d Cir. Feb. 9, 2024), the Circuit considered the defendant's argument that "the Second Amendment bars punishing him for carrying a gun," holding that "[n]othing in [*Range*]," which involved a "single, decades-old conviction of minor welfare fraud," "suggests that it applies to someone with [defendant's] long, serious criminal history." *Id.*

This Court does not, however, rest on the determinations of other courts; it also independently finds that § 922(g)(1) is not facially unconstitutional, or unconstitutional as applied.

**C.      The Second Amendment's Plain Text Covers Laureano, But Not His Conduct**

Within *Bruen*'s first step—determining whether the Second Amendment's text "covers an individual's conduct"—are two sub-issues: the individual and the conduct. First, the individual: as *Range* made clear, the Second Amendment applies to all Americans, not only to law-abiding citizens. 69 F.4th 96, 103 (3d Cir. 2023). Thus, it applies to Laureano.

The next question is whether the Second Amendment applies to an individual's *conduct*. Here, the Government argues that the conduct at issue—possessing ammunition while on supervised release after conviction—is not protected by the Second Amendment. The Court agrees; "[a]rrest and incarceration naturally entail the loss of a wide range of liberties—including the loss of access to weapons." *United States v. Rahimi*, 61 F.4th 443, 464 (5th Cir. 2023) (Ho, J., concurring) (citing *Chimel v. California*, 395 U.S. 752, 762-63 (1969), and then citing *State v.*

7

*Buzzard*, 4 Ark. 18, 21 (1842) (Ringo, C.J.) ("Persons accused of crime, upon their arrest, have constantly been divested of their arms, without the legality of the act having ever been questioned."); *United States v. Terry*, No. 2:20-CR-43, 2023 U.S. Dist. LEXIS 163609, at *4 (W.D. Pa. Sept. 14, 2023) (finding that defendants failed the first step of the *Bruen* test because they were on probation and thus their conduct was not governed by the Second Amendment); *United States v. Jenkins*, No. CR 23-088, 2023 U.S. Dist. LEXIS 181224, at *6 (E.D. Pa. Oct. 6, 2023) ("[W]here a Section 922(g)(1) defendant cannot prove by a preponderance of the evidence that he was carrying a firearm for the purpose of self-defense—or other conduct expressly covered by the Second Amendment, such as hunting—the right to bear arms does not protect the defendant, and the indictment survives an as-applied challenge.").

Conversely, at least one other court in this Circuit has found that the Government's argument "puts the cart before the horse," because it posits that probation or supervised release for a felony excludes conduct from Second Amendment protections before determining whether the underling felony does the same. *See United States v. Harper*, No. 1:21-CR-0236, 2023 U.S. Dist. LEXIS 155822, at *22 (M.D. Pa. Sep. 1, 2023).

This Court respectfully disagrees with that reasoning; whether or not a felony can properly exclude conduct from Second Amendment protections after an individual has completed their sentence, an individual's conduct is properly and justifiably subject to additional restrictions *while serving* their sentence. *See United States v. Reyes*, 283 F.3d 446, 456 (2d Cir. 2002) ("Supervised release . . . is imposed . . . as part of a total sentence in addition to a period of incarceration at the time of the initial sentencing of a convicted federal criminal defendant."); *see also* 18 U.S.C. § 3583(a) ("The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on

a term of supervised release after imprisonment . . . .").  Individuals still serving their sentences are properly subject to certain restrictions, including upon their constitutional rights.  *United States v. Ross*, No. 93-1010, 1995 U.S. App. LEXIS 8724, at *15 (7th Cir. Apr. 13, 1995) (rejecting Second Amendment challenge to "standard" supervised release restriction upon possession of firearm or destructive device); *United States v. Reyes*, 283 F.3d 446, 458 (2d Cir.) (holding that individuals on federal supervised release have diminished Fourth Amendment protections), *cert. denied*, 537 U.S. 822 (2002); *Range*, 69 F.4th at 105 (noting that Range *completed* three years' probation "without incident" and that Government had "not cited a single statute or case that precludes a convict *who has served his sentence* from purchasing the same type of object that he used to commit a crime") (emphasis added).

Additionally, the Government argues that a defendant's purpose is relevant to the "conduct" inquiry, based on prior Supreme Court precedent upholding the individual right to possess arms for the "lawful purpose of self defense."  *See* Opp'n at 13 (citing *District of Columbia v. Heller*, 554 U.S. 570, 630, 635 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742, 767-68 (2010)).

There is some support for the Government's theory.  For example, in *Range,* the plaintiff sought, in a civil action, an affirmative declaration that he could possess a weapon despite his prior Pennsylvania state conviction for a false statement made to obtain food stamps. 69 F.4th at 98.  And the Third Circuit found that whether Range's conduct was covered by the Second Amendment's plain text was an "easy question": "Range's request—to possess a rifle to hunt and a shotgun *to defend himself at home*—tracks the constitutional right as defined by *Heller*." 69 F.4th at 103 (citing *Heller*, 554 U.S. at 582) (emphasis added).  Where an indictment charges a defendant with violating § 922(g)(1) based on conduct falling squarely within the Second Amendment's established rights—armed self-defense, hunting, or serving in the militia, *Range*'s

analysis would more clearly control.  *See United States v. Jenkins*, No. 23-088, 2023 U.S. Dist. LEXIS 181224, at *26 (E.D. Pa. Oct. 6, 2023).

Here, in a criminal context, the issue is not so "easy."  Section 922(g)(1) may require proof of knowledge of felon status, but does not mention any purpose for possessing a firearm or ammunition.  This differentiates Second Amendment challenges to § 922(g)(1), which regulates possession based on felon *status*, from challenges to § 924(c)[8] and U.S.S.G. § 2D1.1(b)(1),[9] which regulate possession based on unlawful *purpose*.  Courts have consistently rejected Second Amendment challenges to the latter, even after *Bruen*.  *See United States v. Cash*, No. 22-2713, 2023 U.S. App. LEXIS 26627, at *6 (3d Cir. Oct. 6, 2023) (collecting post-*Bruen* cases and affirming § 924(c) conviction).

Some post-*Bruen* and *Range* decisions have considered a defendant's purpose as part of the "conduct" involved in a § 922(g)(1) charge.  *See, e.g.*, *United States v. Velazquez*, No. 23-657, 2024 U.S. Dist. LEXIS 1690 (Bumb, C.J.), at *35-36 (D.N.J. Jan. 4, 2024) ("[T]his Court gravely doubts the Second Amendment's text protects his conduct—possessing a firearm while allegedly engaging in drug trafficking.").  In *Velazquez*, as here, the indictment contained just one charge: knowing possession of a firearm and ammunition by a felon in violation of § 922(g)(1).  And because the "credible evidence . . . reveal[ed the defendant] possessed the firearm in connection with an alleged drug deal," his as-applied challenge to § 922(g)(1) failed.  *Id.* at *36.

Likewise, in *Jenkins*, as here, the defendant had prior felony convictions and an outstanding warrant, prompting officers to frisk him and discover a weapon, ammo, and drugs.  2023 U.S. Dist.

---

[8] § 924(c)(1)(A) prohibits the use or carrying of firearms "during and in relation to" any crime of violence or drug trafficking crime.

[9] U.S.S.G. § 2D1.1(b)(1) imposes a sentencing enhancement where a defendant commits a drug trafficking crime and a "dangerous weapon (including a firearm) was possessed."

LEXIS 181224, at *2.  And there, like here, the indictment omitted the drugs, and charged only knowing possession of a firearm and ammunition by a felon.  *Id.*  And rounding out the similarities: the defendant moved to dismiss, arguing that § 922(g)(1) is unconstitutional both facially and as applied to him.  *Id.* at *1.

The court ultimately held, as relevant here, that whatever *Bruen* and *Range* did change, it did not change prior precedent considering an individual's purpose for firearm possession, and declining to extend the right to bear arms beyond *lawful* purposes like self-defense in the home. *See id.* at *28 (citing *Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016) (noting that *Binderup*'s plurality and concurring opinions, comprising a total 12 of 15 en banc votes, agreed that the right to bear arms was rooted in self-defense).

Other courts have disagreed with that approach.  *Harper*, 2023 U.S. Dist. LEXIS 155822, at *20-21 ("Other than to address a Second Amendment challenge, there is no reason to require a defendant accused of illegal possession of a firearm pursuant to Section 922(g) to state his purpose for possessing the firearm. That is because the circumstances surrounding the possession do not impact the elements of the offense."); *United States v. Bullock*, No. 3:18-CR-165, 2023 U.S. Dist. LEXIS 112397, at *47-48 (S.D. Miss. June 28, 2023) ("*Bruen* step one requires us to look at the 'conduct' being regulated, not the status of the person performing the conduct. . . . [T]he conduct the [G]overnment seeks to punish is Mr. Bullock's (alleged) knowing possession of a firearm in his home. It hasn't charged him with brandishing a weapon, firing one, domestic violence, assault, or battery.").  *Harper* highlights a significant concern: analyzing a defendant's purpose for possession could require a defendant to "make a representation about his purpose in possessing a firearm without that representation being deemed an admission."  2023 U.S. Dist. LEXIS 155822, at *21.

The Court agrees with the Government, *Velazquez*, and *Jenkins*.  Though Laureano, notwithstanding his prior convictions, is among the "people" covered by the Second Amendment, the record demonstrates that his alleged "conduct"—knowing, unlicensed possession outside the home of ammunition by a felon on supervised release—is not protected by the Second Amendment.  Nevertheless, for the sake of completeness, the Court turns to the second stage of *Bruen*'s framework.

### D.    § 922(g)(1), As Applied, is Constitutional Because This Nation Has a Historical Tradition of Disarming Those Deemed Dangerous

Where the Second Amendment has been found to apply, the Government "bears the burden of proof: it 'must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'"  *Range*, 69 F.4th at 101 (quoting *Bruen*, 142 S. Ct. at 2127).[10]  Here, the Government has met its burden to show that § 922(g)(1) is consistent with "this Nation's historical tradition of firearm regulation" and does not violate the Second Amendment because disarming people posing a danger to society is deeply rooted in our country's legal traditions.

"This Nation has a historical tradition of disarming dangerous individuals and those who would endanger the public's safety if allowed a firearm."  *Velazquez*, 2024 U.S. Dist. LEXIS 1690, at *37-38 (citing *Koons v. Platkin*, No. 22-7464, 2023 U.S. Dist. LEXIS 85235, at *74 (D.N.J. May 16, 2023); *accord Range*, 69 F.4th at 111-12 (Ambro, J. concurring, joined by Greenaway,

---

[10] This has been criticized as, among other things, a "historical Where's Waldo."  *United States v. Love*, 647 F. Supp. 3d 664, 670, at *1 (N.D. Ind. 2022); *see also Bullock*, 2023 U.S. Dist. LEXIS 112397, at *3-4 (quoting Gordon S. Wood, *The Supreme Court and the Uses of History*, 39 Ohio N.U. L. Rev. 435, 446 (2013)) ("Yet it appears that the Court continues to engage in 'law office history'—that is, history selected to 'fit the needs of people looking for ammunition in their causes'—in Constitutional interpretation.").

Jr., J., and Montgomery-Reeves, J.) (explaining Founding era disarmament laws "were measures driven by the fear of those who, the political majority believed, would threaten the orderly functioning of society if they were armed," and "[c]ertain regulations contemporaneous with the Fourteenth Amendment's ratification reaffirm the familiar desire to keep arms from those perceived to threaten the orderly functioning of society"); *see also United States v. Smith*, No. 2:23-cr-00008, 2023 U.S. Dist. LEXIS 184606, at *11 (W.D. Pa. Oct. 13, 2023) ("While . . . there is no historical tradition from the colonial era or early Republic categorically disarming those merely convicted of crimes ([particularly those like *Range*]), there is a long history of disarming people who pose a danger to society.").

Courts in the Third Circuit have, even after *Range*, found almost uniformly that bans on possession of firearms by a person previously convicted of crimes is constitutional.[11] This includes a variety of predicate convictions for a defendant's § 922(g)(1) charge imputing some level of dangerousness or other basis for distrust.[12] These cases are consistent with the Third Circuit's caution that *Range*'s holding was a "narrow one" limited to the particular, distinguishable facts

---

[11] *United States v. Stone*, No. 22-445, 2023 U.S. Dist. LEXIS 227209, at *3 (E.D. Pa. Dec. 21, 2023) (collecting E.D. Pa cases); *United States v. Bost*, No. 2:21-cr-30, 2023 U.S. Dist. LEXIS 201002, at *3, 5 (W.D. Pa. Nov. 8, 2023) (collecting W.D. Pa and M.D. Pa cases); *United States v. Hawkes*, No. 22-111, 2023 U.S. Dist. LEXIS 215869 (D. Del. Dec. 4, 2023).
[12] *United States v. Woznichak*, No. 21-242, 2023 U.S. Dist. LEXIS 199512, at *16-17 (W.D. Pa. Nov. 7, 2023) (felony drug trafficking offenses); *Porter v. United States*, Civil Action No. 22-6199, 2023 U.S. Dist. LEXIS 175156, at *18 (D.N.J. Sep. 28, 2023) (same); *United States v. Bost*, No. 2:21-cr-30, 2023 U.S. Dist. LEXIS 201002, at *4 (W.D. Pa. Nov. 8, 2023) (terroristic threats); *United States v. Johnson*, No. 23-cr-77, 2023 U.S. Dist. LEXIS 174896, at *3 (E.D. Pa. Sept. 27, 2023) (carrying a firearm without a license and receiving stolen property); *United States v. Davis*, No. 23-cr-60, 2023 U.S. Dist. LEXIS 185738, at *10 (M.D. Pa. Oct. 16, 2023) (unlawful possession of a sawed-off shotgun and felony larceny); *United States v. Robinson*, No. 22-cr-362, 2023 U.S. Dist. LEXIS 191972, at *6-8 (M.D. Pa. Oct. 25, 2023) (grand theft of a motor vehicle).

present in that case: a civil petition for possession of a weapon in the home by someone who had completed their sentence for a non-"dangerous" felony.  69 F.4th at 106.

This Court need not retread ground well-worn by the many other thorough opinions addressing the issue.  *See supra* at nn. 11, 12.  The Court is persuaded, however, by the Government's myriad authorities highlighting Second Amendment precursors that disarmed those deemed "dangerous" or "distrusted."  Opp'n at 12-18.  Considering the overwhelming body of historical analogues, precedent, and persuasive authority, the Court finds that § 922(g)(1), as applied, is constitutional based on the predicate convictions, at least one of which is for drug trafficking.

It is true that some courts within this Circuit have found that the Government failed to meet its burden.  *See United States v. Quailes*, No. 1:21-CR-0176, 2023 U.S. Dist. LEXIS 147657 (M.D. Pa. Aug. 22, 2023) and *Harper*, 2023 U.S. Dist. LEXIS 155822.  The same was found in Judge Reeves' thorough *Bullock* decision.  2023 U.S. Dist. LEXIS 112397 at *9.  However, this Court is not bound by those cases, and does not find them persuasive.

Notably, unlike in those cases, the Government has provided ample authority here to affirmatively prove that § 922(g)(1) "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."  In contrast, Judge Reeves in *Bullock* observed that the Government had submitted only a "three-and-a-half page response limit[ing] *Bruen* to its facts." 2023 U.S. Dist. LEXIS 112397, at *9; *see also Harper*, 2023 U.S. Dist. LEXIS 155822, at *29-30 ("[T]he Government makes no effort to identify a historical analogue that involves the criminalization of firearm possession for those convicted of drug trafficking offenses (or any kind of drug-related or trafficking-related offense for that matter) or robbery offenses.").

Accordingly, this Court will **DENY** the as-applied Second Amendment challenge.

14

Case 2:23-cr-00012-EP   Document 27   Filed 02/28/24   Page 15 of 15 PageID: 271


**E.** **Because § 922(g)(1), as Applied, is Constitutional, Any Facial Challenge Also Fails**

A facial challenge is "the most difficult challenge to mount successfully" because "the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).  Because there is no demonstration that § 922(g)(1) is unconstitutional as applied, the facial challenge must fail.  *United States v. Mitchell*, 652 F.3d 387, 415 (3d Cir. 2011) ("Because the statute is constitutional as applied to defendant, he has not shown that there is no set of circumstances under which the statute may be applied constitutionally.") (cleaned up); *see also Velazquez*, 2024 U.S. Dist. LEXIS 1690, at *40-41.

**III.** **CONCLUSION AND ORDER**

No precedential opinion, including *Bruen* and *Range*, has held that § 922(g)(1) is unconstitutional, and there is no cause, on this record, to hold otherwise.  Accordingly, the Court will **DENY** the constitutional challenge, and therefore **DENY** the request to withdraw the guilty plea.  Accordingly, it is

**ORDERED** that the motion to withdraw/dismiss (D.E. 15) is **DENIED**.

February 28, 2024

Evelyn Padin, U.S.D.J.